Stuart M. Grant
Megan D. McIntyre
James R. Banko
GRANT & EISENHOFER P.A.
1201 North Market Street
Wilmington, Delaware  19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
*Co-Lead Counsel for Lead Plaintiffs and
the Class*

Kevin P. Roddy
WILENTZ, GOLDMAN
   & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey  07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
*Local Counsel for Lead Plaintiffs and the Class*

Thomas A. Dubbs
Ira A. Schochet
David J. Goldsmith
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
*Co-Lead Counsel for Lead Plaintiffs and
the Class*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE ABLE LABORATORIES SECURITIES LITIGATION | : | CIVIL ACTION |
|  | : | NO: 05-CV-2681 (JAG) (MCA) |
|  | : |  |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, FOR
PRELIMINARY CLASS CERTIFICATION, FOR APPROVAL OF FORM AND
MANNER OF NOTICE, AND FOR SETTING OF FINAL FAIRNESS HEARING**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF FACTS ............................................................................. 1

ARGUMENT ............................................................................................... 5

I.      APPLICABLE LEGAL STANDARDS ................................................ 5

II.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
APPROVAL BECAUSE IT IS WITHIN THE RANGE OF VALUE
WARRANTING APPROVAL ............................................................ 6

III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ............................ 7

      A.     This Case Satisfies The Prerequisites Of Rule 23(a) ............................... 8

            1.     The Settlement Class Is Sufficiently Numerous .......................... 9

            2.     There Are Common Questions Of Law And Fact ....................... 9

            3.     The Class Representatives' Claims Are Typical Of  Those
Of The Settlement Class .................................................... 10

            4.     The Class Representatives Will Fairly And Adequately
Protect The Interest Of The Class ........................................ 11

      B.     The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3) .......................... 11

            1.     Common Legal And Factual Questions Predominate ............................. 12

            2.     A Class Action Is Superior To Other Methods Of
Adjudication ................................................................. 12

IV.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE
CLASS ARE SUFFICIENT ............................................................. 14

CONCLUSION.............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Amplidyne, Inc.*,
No. 99-cv-4468, 2001 WL 34885324 (D.N.J. Aug. 15, 2001) ...............................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................................8, 12

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ......................................................................................................10

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................................12, 13

*In re Community Bank of Northern Va.*,
418 F.3d 277 (3d Cir. 2005)......................................................................................................8

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ...................................................................................................16

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995), *aff'd* 134 F. 3d (3d Cir. 1998) .....................................................5

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992).....................................................................................................11

*Jones v. Commerce Bancorp, Inc.*,
No. 05-cv-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) ....................................................5

*Larson v. Sprint Nextel Corp.*,
No. 07-cv-5325, 2009 WL 1228443 (D.N.J. Apr. 30, 2009)...................................................14

*In re LG/Zenith Rear Projection Television Class Action Litig.*,
No. 06-cv-5609, 2009 WL 455513 (D.N.J. Feb. 18, 2009) ......................................................9

*In re Livent, Inc. Noteholders Sec. Litig.*,
210 F.R.D. 512 (S.D.N.Y. 2002) .......................................................................................12, 13

*In re Lucent Techs., Inc. Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ...........................................................................................9

*McGee v. Cont'l Tire N. Am., Inc.*,
No. 06-cv-6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009) .....................................................11

*McNamara v. Bre-X Minerals Ltd.*,
　　214 F.R.D. 424 (E.D. Tex. 2002)............................................................................11

*Pennsylvania Dental Ass'n v. Med. Serv. Ass'n of Pa.*,
　　745 F.2d 248 (3d Cir. 1984)..................................................................................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
　　148 F.3d 283 (3d Cir. 1998)..................................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
　　177 F.R.D. 216 (D.N.J. 1997)...........................................................................14, 15

*Shamberg v. Ahlstrom*,
　　111 F.R.D. 689 (D.N.J. 1986)..................................................................................9

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
　　No. 06-cv-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) .......................... *passim*

*In re Sumitomo Copper Litig.*,
　　189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................14

*In re W.R. Grace & Co.*,
　　No. 01-bk-01139, 2009 WL 230138 (Bankr. D. Del. Jan. 16, 2009) .......................5

*In re Warner Chilcott Ltd. Sec. Litig.*,
　　No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................16

*In re Wireless Facilities, Inc. Sec. Litig. II*,
　　253 F.R.D. 607 (S.D. Cal. 2008) ...........................................................................16

*Zinberg v. Washington Bancorp, Inc.*,
　　138 F.R.D. 397 (D.N.J. 1990).................................................................................9

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ................................................................................................15

**RULES**

Fed. R. Civ. P.  23(a) ....................................................................................................8

Fed. R. Civ. P. 23(a)(1).................................................................................................9

Fed. R. Civ. P.  23(a)(2)..............................................................................................10

Fed. R. Civ. P. 23(a)(3)...............................................................................................10

Fed. R. Civ. P. 23(a)(4)...............................................................................................11

Fed. R. Civ. P.  23(b) ...................................................................................................8

Fed. R. Civ. P.  23(b)(3) .......................................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................14, 15

Fed. R. Civ. P. 23(e)(1) .................................................................................................14

Fed. R. Civ. P. 23(e)(2) ...................................................................................................5

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION §21.632 .................................................................6

Lead Plaintiffs Denver Employees Retirement Plan and Deka International (Ireland) Limited ("Lead Plaintiffs"), on behalf of themselves and the members of the proposed class (the "Class") in this securities class action, hereby submit this memorandum of law in support of their application for preliminary approval of a proposed settlement of this action (the "Settlement"), for preliminary certification of the action as a class action, for approval of the form and manner of Notice and Publication Notice to be disseminated to the Class, and for the setting of a final hearing regarding final approval of the Settlement, plan of allocation, class certification, and class counsel's application for attorneys' fees and expenses.

## STATEMENT OF FACTS

In this action, Lead Plaintiffs assert securities fraud claims against Dhananjay Wadekar, Robert Mauro, Shashikant Shah, Garth Boehm, and Iva Klemick (collectively, the "Defendants"), all of whom are former officers and/or directors of Able Laboratories, Inc. ("Able" or the "Company"), a now-defunct generic drug manufacturer.  On behalf of a Class consisting of all persons or entities who purchased or otherwise acquired Able common stock from October 30, 2002 through May 18, 2005 (the "Class Period"), Lead Plaintiffs allege that the Defendants violated the Securities Exchange Act of 1934 (the "1934 Act") by making material false statements or omissions to investors regarding Able's compliance with U.S. Food and Drug Administration ("FDA") quality control mandates, and/or by engaging in fraudulent scheme to conceal from investors the deficiencies in Able's quality controls.

Specifically, Lead Plaintiffs allege that Able obtained FDA approvals for its products through falsification and manipulation of test results and submission of incomplete and inaccurate reports to the FDA, and that Able persistently failed to comply with FDA regulations and statutes governing testing, manufacture, labeling, storage, record keeping, drug approval, and quality control.  By concealing these facts and portraying the Company to investors as a

"turnaround" story with triple-digit growth in revenues and earnings, the Defendants caused the Company's stock price to be artificially inflated.

On May 19, 2005, the day after its stock reached an all-time high of $26.49 per share, Able announced that an internal investigation had identified "apparent departures from standard operating procedures with respect to certain laboratory testing practices." As a result, the Company announced that it was suspending the sales of all of its products.  By the end of 2005, Able had recalled all of its products, permanently shut down its operations, and liquidated its assets in bankruptcy.  The revelation of the undisclosed quality control failures and regulatory violations rendered the Company's stock worthless, causing losses of more than $450 million to Able's stockholders.

Based on these allegations, Lead Plaintiffs alleged that Defendants Wadekar, Mauro and Shah violated Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Lead Plaintiffs also alleged that Defendant Wadekar violated Section 18 of the 1934 Act, 15 U.S.C. § 78r, and that Defendants Wadekar and Shah engaged in insider trading in violation of Section 20A of the 1934 Act, 15 U.S.C. § 78t-1.  In addition, Plaintiffs alleged that each of the Defendants was liable as a "control person" pursuant to Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), for violations of Sections 10(b) and 18 by Able.

The Defendants moved to dismiss Lead Plaintiffs' claims, and by Order dated June 29, 2007, the Court denied those motions in their entirety.  In recognition of the limited resources available to pay a judgment or settlement in the action – including directors' and officers' liability insurance with a limit of $25 million that was being reduced by defense costs – Lead Plaintiffs agreed to an informal stay of the action after the motions to dismiss were denied, so the parties could pursue settlement.

The settlement negotiations were a long and arduous process, involving the parties to not only this action, but also two other cases – one brought on behalf of a class of consumers of Able's drug products, and one brought by Able's bankruptcy trustee.  The initial settlement discussions were conducted under the auspices of an experienced private mediator, David Geronemus.  When those sessions did not produce a settlement, Magistrate Judge Arleo conducted several settlement conferences in an effort to help the parties forge an agreement. Those conferences brought the parties closer together but still did not produce a settlement.  It was not until the parties attended a day-long settlement conference before this Court together with Magistrate Judge Arleo that they were finally able to bridge the gap between them, and an agreement-in-principle was reached.

The Settlement provides that the defendants or their insurers shall pay $9,150,000.00 in cash into an escrow account for the benefit of the members of the Class in this action and the members of the class in the consumer class action captioned *Elnora Kirtley, et al.  v. Dhananjay G. Wadekar, et al.*, Case No. 05-CV-5383 (D.N.J.) (the "Consumer Class"). In addition, the Class (but not the Consumer Class) will receive 25% of any unused balance of a $4,500,000.00 reserve (the "Reserve") to be established by Defendants' insurers for payment of certain future costs that may be incurred by their insureds.  In consideration of these payments, this action will be dismissed with prejudice, and Lead Plaintiffs and all members of the Class will grant releases in favor of the Defendants and certain other former officers and directors of Able.

The terms of the Settlement are set forth in detail in the Stipulation and Agreement of Settlement dated December 30, 2009 ("Settlement Agreement"), which is being filed concurrently with this motion.[1]  The Settlement Agreement and its supporting papers also

---

[1]     Unless otherwise specified, defined terms used in this memorandum of law shall have the same meaning as ascribed to the terms in the Settlement Agreement.

provide for the form and manner of class notice, the proof of claim procedures, the proposed plan

of allocation of the settlement proceeds among members of the Class and the Consumer Class,

and the procedures for seeking exclusion from the Class or objecting to any terms of the

Settlement or to Lead Counsel's application for attorneys' fees and reimbursement of expenses.

Lead Plaintiffs respectfully submit that preliminarily approval of the Settlement is

appropriate.  The Settlement was reached after Plaintiffs defeated the Defendants' motions to

dismiss, and after extensive arm's-length settlement negotiations that were facilitated by a

professional mediator and, subsequently, by the Court.  Based on the limited and diminishing

resources that were available to fund a settlement or ultimate judgment in this action, and the fact

that Lead Plaintiffs and the Class in this action would be forced to compete with plaintiffs in

other actions (including the Consumer Class) for that limited pool of funds, Lead Plaintiffs

believe the Settlement produces a fair and reasonable result for the Class.  For these reasons,

which are set forth in greater detail below, Lead Plaintiffs request that the Court enter an order,

in the form of the Preliminary Approval Order attached as Exhibit 1 to the accompanying

Motion: (1) granting preliminary approval of the proposed Settlement; (2) preliminarily

certifying the action as a class action; (3) approving the parties' proposed form and method of

giving notice to the Class of the pendency of this litigation and the Settlement; (4) directing that

notice be given to the putative Class members as approved by the Court; and (5) scheduling a

fairness hearing during which the Court will consider (a) the parties' request for final approval of

the Settlement and the Plan of Allocation, final certification of the Class, and entry of the

[Proposed] Final Judgment; (b) Lead Counsel's application for an award of attorneys' fees and

reimbursement of expenses; and (c) dismissal of the action.

## ARGUMENT

I.    **APPLICABLE LEGAL STANDARDS**

As the Court of Appeals for the Third Circuit has stated, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *aff'd*, 134 F.3d (3d Cir. 1998) .  The settlement of a class action requires court approval, "after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

"[R]eview of a proposed class action settlement is a two-step process:  preliminary fairness approval and a subsequent fairness hearing."  *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).  "In the first step of the process a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith*, 2007 WL 4191749, at *1.  This preliminary evaluation does not require an in-depth consideration of the relevant factors for final approval.  Rather, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Id.* (citation omitted); *see also In re W.R. Grace & Co.*, No. 01-bk-01139, 2009 WL 230138, at *2 (Bankr. D. Del. Jan. 16, 2009) (settlement "satisfies the standards for preliminary approval" where its terms are "within the range of reasonableness and contain no obvious deficiencies" and was the product of arm's-length negotiations by experienced and well-informed constituencies).

Where (as here) a class has not previously been certified, the Court must also evaluate the appropriateness of class certification at the preliminary approval stage.  *Smith*, 2007 WL

4191749, at *2.  This typically involves only a preliminary determination that the Rule 23

requirements have been met.  *Id.*; Manual for Complex Litigation § 21.632 (4th ed. 2006) ("The

judge should make a preliminary determination that the proposed class satisfies the criteria set

out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

## II.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL BECAUSE IT IS WITHIN THE RANGE OF VALUE WARRANTING APPROVAL

The Court should preliminarily approve the Settlement because it is sufficiently fair,

reasonable and adequate and thus falls squarely within the range of possible approval.

*First*, the proposed Settlement produces a fair and reasonable result, given the limited

funds available to pay a settlement or judgment in this action.  While Lead Plaintiffs believe that

continuing this litigation through trial would have produced a substantial judgment in favor of

the Class, there is significant doubt that Defendants would have the ability to pay such a

judgment.  Moreover, continued litigation would result in additional defense costs, which would

further deplete the limited pool of available insurance proceeds.  Further, there was a risk that

other plaintiffs would have proceeded to trial and secured judgments first, thus potentially

depleting the entirety of the insurance proceeds and depriving the Class of any recovery.  Under

the circumstances, Lead Plaintiffs believe that the Settlement provides the maximum achievable

recovery for the Class, and that the Settlement is therefore well within the range of

reasonableness.

*Second*, the proposed Settlement is the result of intense arm's-length negotiations.

Commencing in January 2008, the parties engaged in several mediation sessions with a private

mediator, followed by several settlement conferences with this Court.  As the Court is aware

based upon its close involvement in this process, the Settlement was hard-fought and entirely

non-collusive.

*Third*, the proponents of the Settlement are experienced in securities class action litigation.  Lead Plaintiffs are institutional investors who have served as lead plaintiffs in prior securities class actions, and who participated directly in the settlement process in this action.  Indeed, the General Counsel for Lead Plaintiff Denver Employees' Retirement Plan personally attended each and every mediation session and settlement conference, and participated meaningfully in the settlement negotiations.  Additionally, Lead Plaintiffs' counsel and Defendants' counsel each have extensive experience and expertise in complex securities litigation and class action proceedings.

For all of these reasons, Lead Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement.  *See Smith*, 2007 WL 4191749, at *1 ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

## III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

The proposed Class consists of all persons and entities that purchased or otherwise acquired Able's publicly traded common stock during the period from October 30, 2002 through and including May 18, 2005.  The Class excludes: Able and each of its subsidiaries and affiliates; the Defendants; Nitin V. Kotak; Robert Weinstein; C. Robert Cusick; Elliot F. Hahn; Harry Silverman; David S. Tierney; Jerry I. Treppel; F. Howard Schneider; Kamlesh B. Haribhakti; Joan M. Janulis; Konstatin Ostaficiuk; Hemanshu N. Pandya; Janet Penner; Raju Vegesna; Shailesh V. Daftari; James B. Klint; Jyotin Parikh; Jose Concepcion; Ashish Macwan; Dilip

Patel;[2] members of the immediate families of the Defendants and of the other excluded individuals listed above; all entities in which any excluded person has a controlling interest; and the legal representatives, heirs, successors, assigns or insurers of any excluded person.  Also excluded from the Class is any person or entity who or which properly excludes himself, herself or itself by filing a valid and timely request for exclusion.

The courts have long acknowledged the propriety of class certification for purposes of a class action settlement.  *See In re Community Bank of Northern Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997)).  Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met.  *Id.*  Specifically, a class action must meet each of the four requirements set forth in Rule 23(a), and at least one of three requirements set forth in Rule 23(b).  *See* Fed. R. Civ. P. 23(b). Class certification is appropriate here because this action easily meets the requirements of Rule 23(a) and Rule 23(b)(3).

### A.  <u>This Case Satisfies The Prerequisites Of Rule 23(a)</u>

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

---

[2] The listed individuals were named as defendants in the *Kirtley* consumer class action and the action brought by the Bankruptcy Trustee, or are former Able employees who have pleaded guilty to criminal conduct underlying Lead Plaintiffs' claims herein.

## 1.      The Settlement Class Is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  According to Able's March 2005 Form 10-K filing with the SEC, as of February 15, 2005 there were more than 18 million shares of Able common stock outstanding, which were held of record by approximately 1,800 holders.  Because stockholders frequently hold their shares in "street name" through brokerage firms, it is reasonable to expect that the number of stockholders and Class members is well into the thousands.  Thus, joinder of all Class members would be impracticable and the Class is sufficiently numerous to satisfy Rule 23(a)(1).  *See Smith*, 2007 WL 4191749, at *3 ("Courts in the Third Circuit generally hold that classes of close to one hundred members are sufficient."); *In re LG/Zenith Rear Projection Television Class Action Litig.*, No. 06-cv-5609, 2009 WL 455513, at *4 (D.N.J. Feb. 18, 2009) ("sufficient numerosity can be shown with approximately one hundred class members"); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990) (numerosity requirement was met where stock was traded nationally and there were 2.3 million shares outstanding with 1,155 shareholders of record).

## 2.      There Are Common Questions Of Law And Fact

Federal securities cases like this one easily meet the commonality requirement of Rule 23(a)(2), because the claims of all Class members arise from the same course of conduct by the Defendants and involve the same legal theories.  *See In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 698 (D.N.J. 1986) (finding commonality because "the complaint's allegations revolve around a 'common nucleus' of law and fact that is the hallmark of a securities class action").  Lead Plaintiffs' claims against the Defendants present many questions of law and fact which are common to all members of the Class, including:

- Whether the Defendants participated in and pursued the course of conduct described in the Complaint;

- Whether the Defendants' alleged misrepresentations and omissions were material;

- Whether the Defendants' conduct violated Sections 10(b), 18, 20A and/or 20(a) of the 1934 Act;

- To what extent the Class members have sustained damages that were caused by the Defendants' violations of the securities laws; and

- The proper measure of the damages sustained by members of the Class.

Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### 3.    The Class Representatives' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is designed to ensure that "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Id.* at 58; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (typicality satisfied where "[t]he named plaintiffs, as well as the members of the proposed class, all have claims arising from the fraudulent scheme perpetrated by [the defendant]").

Here, the injuries to Lead Plaintiffs and the members of the Class are attributable to the same alleged course of conduct by the Defendants, and liability for this conduct is predicated on the same legal theories. As such, the Rule 23(a)(3) typicality requirement is satisfied.

10

**4.    The Class Representatives Will Fairly And Adequately
Protect The Interest Of The Class**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: (1) whether the plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation; and (2) whether the class representatives has interests antagonistic to those of the class.  *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *Pennsylvania Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 262-63 (3d Cir. 1984).

Here, Lead Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified and able to conduct this litigation – as they have demonstrated in negotiating the Settlement.  Moreover, Lead Plaintiffs and the Class share the common goal of maximizing recovery, and there is no conflict between them.  Rule 23(a)(4) is therefore satisfied.  *See McGee v. Cont'l Tire N. Am., Inc.*, No. 06-cv-6234, 2009 WL 539893, at *11 (D.N.J. Mar. 4, 2009) (adequacy requirement met where lead plaintiffs "have advocated as vigorously for the absent class members as they have for themselves"); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 428-29 (E.D. Tex. 2002) (finding no conflict between named plaintiff and class members where both groups sought maximum recovery).

**B.    The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure

judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 614-15 (citation omitted). Certification of the Class under Rule 23(b)(3) will serve these purposes.

### 1.    Common Legal And Factual Questions Predominate

"'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (citation omitted) (common issues predominate where "each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct [and] the only individualized question concerns the amount of damages") *Id.* ; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."). The Rule 23(b)(3) test of predominance is "readily met" in securities fraud cases. *Amchem Prods.*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Defendants forms the basis of all Class members' claims against it. There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class

members' interests in individually controlling the prosecution . . . of separate actions; (B) the

extent and nature of any litigation concerning the controversy already begun by . . . class

members; (C) the desirability . . . of concentrating the litigation of the claims in the particular

forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

Considering these factors, this class action is clearly "superior to other available methods

for the fair and efficient adjudication" of the claims of the vast number of purchasers of Able

stock.  Lead Plaintiffs are unaware of any other litigation already commenced by individual

Class members, which is not surprising given the tremendous costs associated with such

litigation.  Indeed, courts have concluded that the class action device in securities cases is usually

the superior method by which to redress injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority
> requirement of Rule 23.  Most violations of the federal securities
> laws, such as those alleged in the Complaint, inflict economic
> injury on large numbers of geographically dispersed persons such
> that the cost of pursuing individual litigation to seek recovery is
> often not feasible.  Multiple lawsuits would be costly and
> inefficient, and the exclusion of class members who cannot afford
> separate representation would neither be "fair" nor an adjudication
> of their claims.  Moreover, although a large number of individuals
> may have been injured, no one person may have been damaged to
> a degree which would induce him to institute litigation solely on
> his own behalf.

*In re Blech,* 187 F.R.D. at 107; *see also In re Livent*, 210 F.R.D. at 518 (in the absence of class

certification, "not only would separate and scattered lawsuits be needlessly repetitive and

inefficient . . . many putative class members – particularly, retail investors – would also be

discouraged from even seeking legal relief as their potential recovery would be outweighed by

the transaction costs of individual litigation").

The scope and complexity of Lead Plaintiffs' claims against the Defendants, together

with the massive cost of individualized litigation, make it unlikely that the vast majority of the

Class members would be able to seek relief without class certification.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999).  Moreover, it is clearly desirable to concentrate the claims of all Class members in this forum, and Lead Plaintiffs do not foresee any difficulties in the management of this action as a class action.  Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court should preliminarily certify this action as a class action on behalf of the proposed Class.

## IV.   THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE CLASS ARE SUFFICIENT

"After the Court preliminarily determines that a settlement is fair and that class certification is appropriate, it must then address the notice to be given to the class."  *Smith*, 2007 WL 4191749, at *5.  Where the class is to be notified of both a proposed settlement and a provisional certification of the class for settlement purposes, the notice should comply with both Rule 23(e) and Rule 23(c)(2)(B).  *See Larson v. Sprint Nextel Corp.*, No. 07-cv-5325, 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 230 (D.N.J. 1997).

In terms of the manner of providing notice, Rule 23(e)(1) requires simply that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," while Rule 23(c)(2)(B) requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members," and "[f]or those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause."  *Prudential*, 177 F.R.D. at 232; *see also id.* at

231 ("due process does not require actual notice, but rather a good faith effort to provide actual notice").

The content of a class notice in a securities class action is governed by Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 23(c)(2)(B) requires that the notice:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The PSLRA requires disclosure of the following additional information:

- The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;

- If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged, a statement from each settling party concerning the issue or issues on which the parties disagree;

- A statement indicating which parties or counsel intend to apply for an award of fees or costs from the settlement fund, as well as the amount to be requested (including on an average per share basis) and a brief explanation supporting the fees and costs sought;

- The name and contact information of representatives of plaintiffs' counsel who will be reasonably available to answer class members' questions; and

- The reasons for the settlement.

*See* 15 U.S.C. § 78u-4(a)(7).

In the present case, both the form and the content of the proposed notice to the Class are sufficient and should be approved by the Court.

*First*, Lead Plaintiffs have submitted two forms of notice to the Court for approval: a Summary Publication Notice ("Publication Notice") and a long-form Notice ("Notice"), attached as Exhibits C and D, respectively, to the proposed Preliminary Approval Order. Plaintiffs have agreed to publish the Publication Notice in *Investor's Business Daily*; to send the Notice by first-class mail to those members of the Class whose addresses can be identified through reasonable effort; and to post both the Notice on Lead Counsel's and the claims administrator's websites. These are all well-established means of providing legally sufficient notice in securities class actions. *See, e.g., Fidel v. Farley*, 534 F.3d 508, 514-15 (6th Cir. 2008) (notice program "comported with the requirements of both due process and Rule 23(c)(2)(B)" where notice was mailed to brokerage houses and summary notice was published in *Investor's Business Daily* and on the internet); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (same); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 613 (S.D. Cal. 2008) (notice program was adequate where it involved mailing to stockholders who could be identified with reasonable effort, plus publication of a summary notice in *Investor's Business Daily*); *Adams v. Amplidyne, Inc.*, No. 99-cv-4468, 2001 WL 34885324, at **1-2 (D.N.J. Aug. 15, 2001) (same).

*Second*, the Notice provides detailed descriptions of the action, the Settlement, the Class, and the options available to potential Class members, including the right to object or opt out. *See* Exhibit D to the proposed Preliminary Approval Order. The Publication Notice provides similar information in a summary form, and informs the reader how to obtain a copy of the more detailed Notice. *See* Exhibit C to the Preliminary Approval Order. With respect to the PSLRA's requirements, the Notice: (1) states the aggregate and per share amounts that are estimated to be distributed to the Class; (2) describes the parties' areas of disagreement with respect to the

Class's recoverable damages; (3) states that Lead Plaintiffs' Counsel will request attorneys' fees and reimbursement of litigation expenses and the basis for the request; (4) identifies representatives of Lead Plaintiffs' Counsel who can be contacted for additional information; and (5) explains the reasons for the Settlement.

Accordingly, Lead Plaintiffs respectfully request that this Court approve the form and content of the proposed Notice and Publication Notice.

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter an order in the form of the proposed Preliminary Approval Order which is attached as Exhibit 1 to the Motion:  (1) preliminarily approving the proposed Settlement; (2) preliminarily certifying this action as a class action; (3) approving the form and manner of proposed Notice and Publication Notice; and (4) setting a date and time for the hearing regarding final approval of the Settlement and Plan of Allocation, final certification of the Class, and Lead Counsel's application for attorneys' fees.

Dated:  January 4, 2010

By:    /s/ James R. Banko
       Stuart M. Grant
       Megan D. McIntyre
       James R. Banko
       GRANT & EISENHOFER P.A.
       1201 North Market Street
       Wilmington, Delaware  19801
       Telephone: (302) 622-7000
       Facsimile: (302) 622-7100
       *Co-Lead Counsel for*
       *Lead Plaintiffs and the Class*

Thomas A. Dubbs
Ira A. Schochet
David J. Goldsmith
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
*Co-Lead Counsel for*
*Lead Plaintiffs and the Class*

Kevin P. Roddy
WILENTZ, GOLDMAN
 & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey  07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
*Local Counsel for*
*Lead Plaintiffs and the Class*